IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA,

     v.                                                                 Criminal No. 3:19cr131

LAWRENCE G. PATTERSON,

     Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Lawrence G. Patterson's Motion to Reduce Sentence Pursuant to Section 603(b) of the First Step Act (the "Motion for Compassionate Release"). (ECF No. 49.) The United States responded in opposition. (ECF No. 53.) Mr. Patterson has not replied, and the time to do so has expired.

The matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons that follow, the Court will deny the Motion for Compassionate Release. (ECF No. 49.)

### I.  Background

#### A.   Mr. Patterson's Underlying Offense

On September 17, 2019, Mr. Patterson was charged in a two-count indictment:  one count of Possession with Intent to Distribute Methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), and one count of Possession of a Firearm by a Prohibited Person in violation of 18 U.S.C. § 922(g)(1). (ECF No. 1, at 1–2.) On January 27, 2020, Mr. Patterson entered into a written plea agreement with the United States in which he pled guilty to the charge of possession with intent to distribute methamphetamine (Count One). (ECF No. 15 ¶ 1.)

The Plea Agreement and the Statement of Facts describe the conduct underlying Mr. Patterson's offense. (ECF Nos. 15, 16.) Between February 2019 and March 2019, Mr. Patterson resided at Candlewood Suites located at 4301 Commerce Road, Richmond, Virginia, where he rented various rooms. (ECF No. 16 ¶¶ 2–3.) On March 21, 2019, a United States Marshals Service (the "Marshals") Task Force attempted to execute an arrest warrant for Mr. Patterson. (ECF No. 16 ¶ 2.) Upon arriving at Candlewood Suites, the Marshals observed Mr. Patterson and a woman moving out of the hotel and loading luggage into a 1999 Chevrolet Suburban. (ECF No. 16 ¶ 4.) When Mr. Patterson saw the Marshals, he grabbed a nearby railing and clung to it until the Marshals removed him. (ECF No. 16 ¶ 6.) Mr. Patterson "had an empty holster on his hip," and the woman with him had a firearm at her hip. (ECF No. 16 ¶¶ 6–7.) The Marshals saw an additional firearm in plain sight in one of the bags the woman was carrying to the vehicle. (ECF No. 16 ¶ 7.) The Marshals conducted a search of the Suburban and found six additional firearms: two twelve-gauge shotguns, two .45 caliber semi-automatic pistols, a .22 caliber long rifle, and a 9mm Smith & Wesson pistol. (ECF No. 16 ¶ 8.) The Marshals also found "various ammunition[,] approximately 232.59 grams of methamphetamine[,] approximately 21.5 grams of 3,4-methylenedioxymethamphetamine (MDMA)[,] approximately 34.92 grams of marijuana[,] 2 digital scales", and a total of $24,703.55 in United States currency. (ECF No. 16 ¶ 8.) The Marshals recovered an additional $3,199.33 from Mr. Patterson's person, and an additional $260 from Mr. Patterson's room at the Candlewood Suites. (ECF No. 16 ¶¶ 10, 12.)

Prior to sentencing, the probation officer prepared the Presentence Report ("PSR") for Mr. Patterson, summarizing his offense level and criminal history. (ECF No. 45 ¶¶ 13–72.) Pursuant to U.S.S.G. § 2D1.1(a)(5) and (c)(4), Mr. Patterson's base offense level was 32. (ECF No. 45 ¶ 14.) He correctly received an additional two points pursuant to U.S.S.G. § 2D1.1(b)(1)

2

for possessing a dangerous weapon (a firearm) during the offense.  (ECF No. 45 ¶ 15.)  Mr. Patterson then received a three-point reduction pursuant to U.S.S.G. § 3E1.1(a) and (b) for acceptance of responsibility.  (ECF No. 45 ¶¶ 21–22.)  This produced a Total Offense Level of 31.  (ECF No. 45 ¶ 23.)

Mr. Patterson's prior criminal convictions resulted in a subtotal criminal history score of 21.  (ECF No. 45 ¶ 73.)  He received a two-point enhancement for "committ[ing] the instant offense while under a criminal justice sentence" pursuant to the then-applicable U.S.S.G. § 4A1.1(d),[1] resulting in a total criminal history score of 23 and a Criminal History Category of VI.  (ECF No. 45 ¶¶ 74–75.)

According to the law at the time, Mr. Patterson's Total Offense Level of 31 and a Criminal History Category of VI resulted in a recommended Sentencing Guidelines range of 188–235 months' imprisonment on Count One.  (ECF No. 45 ¶¶ 136–137.)

On June 29, 2020, Mr. Patterson filed a motion for a downward variance which the United States opposed.  (ECF No. 24; ECF No. 28.)  On July 21, 2020, the Court denied the motion for a downward variance and subsequently sentenced Mr. Patterson to 188 months' — the low end of the applicable guidelines — imprisonment followed by three years of supervised release.  (ECF No. 34, at 1–2; ECF No. 36, at 2–3.)

---

[1] In the 2023 Criminal History Amendments to the Untied States Sentencing Guidelines, Part A of Amendment 821 (status points under § 4A1.1) and Part B of Amendment 821 (Zero-Point Offenders) changed this guideline and did so, importantly, retroactively.  What is now U.S.S.G. § 4A1.1(e) — relative to the former § 4A1.1(d) — can reduce the number of points applicable to an offender's criminal history when the offense was committed while under a criminal justice sentence.  The application to zero-point offenders could also reduce an individual's criminal history points.

Nothing in Amendment 821 would alter what would be the calculated Criminal History Category of VI in Mr. Patterson's case.  His final recommended guidelines are unaffected by Amendment 821.

As of October 2, 2024, Mr. Patterson has served 56 months and 27 days of his 188-month term of imprisonment, or approximately 30 percent of his sentence. (*See* ECF No. 50, at 1.) Mr. Patterson is currently housed at FMC Butner in Butner, North Carolina. *See Fed. Inmate Locator*, BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited October 2, 2024). The Bureau of Prisons ("BOP") lists Mr. Patterson's revised release date as May 12, 2033. *See id.*

### B.   Mr. Patterson's Motion for Compassionate Release

On August 11, 2023, Mr. Patterson filed the instant Motion for Compassionate Release. (ECF No. 49.) In the Motion, Mr. Patterson contends that extraordinary and compelling reasons for a sentence reduction exist due to recent studies which allegedly refute the rationale for increased sentences concerning "actual" methamphetamine—often referred to as "ice"—as opposed to "mixed" methamphetamine, as well as Mr. Patterson's "exemplary rehabilitation." (ECF No. 49, at 6–11.)

First, as to "mixed" versus "actual" methamphetamine, Mr. Patterson argues that no continued policy basis exists for the tenfold increase in converted drug weight between "mixed" and "actual" methamphetamine, given that — he says — nearly all methamphetamine in circulation today is sufficiently pure to qualify as "actual" methamphetamine.[2] (ECF No. 49,

---

[2] The United States Sentencing Guidelines distinguish between three types of substances commonly referred to as methamphetamine: (1) "methamphetamine," which is defined as the total mixture containing any detectable amount of the controlled substance; (2) "actual methamphetamine," which is defined as the controlled substance itself, disregarding the uncontrolled portions of a mixture; and, (3) "ice," which is defined as a mixture consisting of at least 80% actual methamphetamine. *United States v. Yates*, 98 F.4th 826, 832–33 (6th Cir. 2024) (citing U.S.S.G. § 2D1.1(c), Notes to Drug Quantity Table (A)–(C)). The Sentencing Guidelines give "actual" methamphetamine and "ice" a weight ten times greater than "mixed" methamphetamine, meaning for example that 45 kilograms of "mixed" methamphetamine would have the same sentencing consequences as only 4.5 kilograms of "actual" methamphetamine or "ice." *See id.*; U.S.S.G. § 2D1.1(c).

at 7–8.)  He identifies several cases where courts deviated from the Guidelines and applied "mixed" methamphetamine guidelines to all methamphetamine violations.  (ECF No. 49, at 8–11.)  Mr. Patterson contends that, were his sentence calculated using the "mixed" methamphetamine guidelines, his guidelines would drop from 188–235 months' imprisonment to 110–137 months' imprisonment.  (ECF No. 49, at 11.)  He argues that "[t]his disparity based upon non-empirically based guidelines" constitutes "an extraordinary and compelling reason to grant compassionate release."  (ECF No. 49, at 11.)

Second, Mr. Patterson emphasizes his exemplary rehabilitation because his substance abuse disorder is "tied" to the ten felony convictions on his record and has been "the primary cause of most of his prior revocation proceedings."  (ECF No. 49, at 6.)  Mr. Patterson states that "[h]is conduct for the past three years shows a markedly different person than who he was when he committed these crimes."  (ECF No. 49, at 7.)  Mr. Patterson informs the Court that he has focused his time while incarcerated on "drug treatment, self-improvement, and becoming a changed man," completing drug treatment and his GED as well as participating in programs such as "anger/hostility, antisocial peers, finance/poverty, and substance abuse programming earning him [at the time of filing] 942 program days."  (ECF No. 49, at 7.)  Mr. Patterson reports that he "is drug free now and during all three years of incarceration," and that "[h]e maintains work at the prison and has not had any disciplinary violations in his three years of incarceration."  (ECF No. 49, at 7.)

Mr. Patterson attaches a character letter from a friend of seven years, (ECF No. 49-2), and asserts that he has a viable release plan: he will "live with family in Virginia with whom he maintains close ties." (ECF No. 49, at 13.)

On February 12, 2024, the United States filed its Response in Opposition to the Motion. (ECF No. 53.) The United States argues that Mr. Patterson's Motion does not present an "extraordinary and compelling reason" for a sentence reduction under U.S.S.G. § 1B1.13 and that rehabilitation does not itself constitute a sufficient basis for a sentence reduction. (ECF No. 53, at 5–14.) The United States emphasizes that converting "actual" methamphetamine to "mixed" methamphetamine under the guidelines, as requested in Mr. Patterson's Motion, would not change the guideline range, and that the 110–137 months range sought in Mr. Patterson's Motion would be achievable only by disregarding the $19,662.88 (converting into 3488.00 kg drug weight) that Mr. Patterson admitted represented proceeds of drug trafficking. (ECF No. 53, at 3 & nn.5–6.) The United States further contends that the "factors in 18 U.S.C. § 3553(a)[3] do not support early release." (ECF No. 53, at 11.)

---

[3] Section 3553(a) of Title 18 of the United States Code states:

The [C]ourt, in determining the particular sentence to be imposed, shall consider—
  (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

  (2) the need for the sentence imposed—

      (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

      (B) to afford adequate deterrence to criminal conduct;

      (C) to protect the public from further crimes of the defendant; and

## II. Compassionate Release Under the First Step Act of 2018

### A.    Legal Standard

Prior to the First Step Act of 2018, an individual could not petition the district court for

relief on compassionate release grounds without approval from the BOP. *See Coleman v. United*

*States*, 465 F. Supp. 3d 543, 546 (E.D. Va. 2020). In 2018, Congress enacted the First Step Act

to provide incarcerated individuals the opportunity to directly petition the courts for

compassionate release under 18 U.S.C. § 3582(c)(1)(A).[4] First Step Act of 2018, Pub. L. No.

---

> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
>
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .
>
> (5) any pertinent policy statement—
>
>> (A) issued by the Sentencing Commission . . .
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

[4] Section 3582(c) states, in pertinent part:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
>> (1) in any case—

115–391, 115th Cong. (2018).  Under the First Step Act, criminal defendants may petition courts

on their own initiative to modify their sentences.  *Coleman*, 465 F. Supp. 3d at 546.

Before granting a reduction, courts must consider the factors set forth in 18 U.S.C.

§ 3553(a), *see* 18 U.S.C. § 3582(c)(1)(A), and evidence of rehabilitation and other post-

conviction conduct.  *See United States v. Martin*, 916 F.3d 389, 397–98 (4th Cir. 2019)

(requiring consideration of post-conviction evidence and statutory sentencing factors in the

context of a sentence reduction sought pursuant to § 3582(c)(2)); *see also United States v.*

*McDonald*, 986 F.3d 402, 412 (4th Cir. 2021) (extending *Martin* to motions filed pursuant to

§ 3582(c)(1)(B)).  However, a petitioner's rehabilitation alone does not provide sufficient

grounds to warrant a sentence modification.  *See* 28 U.S.C. § 994(t).[5]

---

> (A) the court, upon motion of the Director of the Bureau of
> Prisons, or upon motion of the defendant after the defendant has
> fully exhausted all administrative rights to appeal a failure of the
> Bureau of Prisons to bring a motion on defendant's behalf or the
> lapse of 30 days from the receipt of such a request by the warden
> of the defendant's facility, whichever is earlier, may reduce the
> term of imprisonment (and may impose a term of probation or
> supervised release with or without conditions that does not exceed
> the unserved portion of the original term of imprisonment), after
> considering the factors set forth in section 3553(a) to the extent
> that they are applicable, if it finds that—
>
>> (i) extraordinary and compelling reasons warrant such a
>> reduction . . .
>>
>>> and that such a reduction is consistent with
>>> applicable policy statements issued by the
>>> Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).

[5] 28 U.S.C. § 994(t) states:

The Commission, in promulgating general policy statements regarding the
sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall

### B.    Exhaustion of Administrative Remedies

Although the Court generally cannot "modify a term of imprisonment once it has been imposed," a defendant may bring a motion to modify his or her sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. McCoy*, 981 F.3d 271, 283 (4th Cir. 2020); *Casey v. United States*, No. 4:18-CR-4 (RAJ), 2020 WL 2297184, at *1 (E.D. Va. May 6, 2020); *see also United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021) (same).

In his Motion for Compassionate Release, Mr. Patterson submits, and the United States does not dispute, that he has properly exhausted his administrative remedies pursuant to U.S.C. § 3582(c)(1)(A) because Mr. Patterson submitted a request for compassionate release on June 23, 2023 and did not receive a response within 30 days. (*See* ECF No. 49, at 5–6; ECF No. 49-5.) This Court so finds.

### C.    Courts Must Find Extraordinary and Compelling Reasons Justifying Compassionate Release

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify terms of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction[.]" 18 U.S.C. § 3582(c)(1)(A)(i). Congress did not define "extraordinary and compelling reasons" in the

---

describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. *Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.*

28 U.S.C. § 994(t) (emphasis added).

statute. The United States Sentencing Commission does, however, further define "extraordinary and compelling reasons." U.S.S.G. § 1B1.13(b); *see United States v. Burrell*, No. 3:04-CR-364 (JAG), 2023 WL 7726404, at *4 n.7 (E.D. Va. Nov. 15, 2023). The Sentencing Commission

> addressed the issue in a policy statement, United States Sentencing Guideline § 1B1.13, which provided the BOP with several categories of extraordinary and compelling reasons to consider. For years following the passage of the First Step Act, the Sentencing Commission failed to update § 1B1.13 to account for motions filed by defendants, meaning the policy did not bind the courts when presented with a defendant's motion for compassionate release. A court therefore remained empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.

*Burrell*, 2023 WL 7726404, at *4 n.7 (cleaned up) (citing *McCoy*, 981 F.3d at 276, 281–82, 284).

The 2021 Sentencing Guidelines enumerated four bases on which to evaluate a motion for compassionate release. U.S.S.G. § 1B1.13 cmt. n.1(A)–(D) (U.S. SENT'G COMM'N 2021) identified four bases to establish extraordinary and compelling reasons for release:

> (A) medical conditions;
> (B) age;
> (C) family circumstances; and,
> (D) other reasons.

U.S.S.G. § 1B1.13 cmt. n.1(A)–(D).

In 2023, the United States Sentencing Commission published new sentencing guidelines amendments (the "2023 Sentencing Guidelines Amendments" or "2023 Amendments"). Pursuant to the 2023 Amendments, the Sentencing Guidelines now identify six instructive categories of extraordinary and compelling reasons that may allow for a sentence reduction.[6]

---

[6] *See* Appendix A, **U.S.S.G. § 1B1.13(b)** (2023).

These are:

(1) certain medical circumstances of the defendant, such as terminal illness or the inability to receive specialized medical care while incarcerated, [U.S.S.G.] § 1B1.13(b)(1)[7];

(2) the defendant's age, *id.* § 1B1.13(b)(2)[8];

(3) the defendant's family circumstances, *id.* § 1B1.13(b)(3)[9];

(4) the fact that the defendant, while in custody, was the victim of sexual or physical abuse committed by, or at the direction of, a correctional officer, *id.* § 1B1.13(b)(4)[10];

(5) 'any other circumstances or combination of circumstances . . . similar in gravity to' the circumstances 'described in paragraphs (1) through (4).' *Id.* § 1B1.13(b)(5)[11]; and,

(6) the defendant received an 'unusually long sentence,' *id.* § 1B1.13(b)(6).[12]

*United States v. Tucker*, No. ELH-15-0359, 2023 WL 8357340, at *5 (D. Md. Dec. 1, 2023).

The United States Court of Appeals for the Fourth Circuit explained—even before the 2023 Sentencing Guidelines Amendments—that "[w]hen a defendant exercises his [or her] new right to move for compassionate release on his [or her] own behalf . . . § 1B1.13 does not apply, and . . . § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of district courts." *McCoy*, 981 F.3d at 281. The Fourth Circuit further illuminated that:

---

[7] *See* App. A, at **U.S.S.G. § 1B1.13(b)(1)**; *cf.* Appendix B, **U.S.S.G. § 1B1.13 cmt. n.1(A)**.

[8] *See* App. A, at **U.S.S.G. § 1B1.13(b)(2)**; *cf.* App. B, at **U.S.S.G. § 1B1.13 cmt. n.1(B)**.

[9] *See* App. A, at **U.S.S.G. § 1B1.13(b)(3)**; *cf.* App. B, at **U.S.S.G. § 1B1.13 cmt. n.1(C)**.

[10] *See* App. A, at **U.S.S.G. § 1B1.13(b)(4)**.

[11] *See* App. A, at **U.S.S.G. § 1B1.13(b)(5)**; *cf.* App. B., at **U.S.S.G. § 1B1.13 cmt. n.1(D)**.

[12] *See* App. A, at **U.S.S.G. § 1B1.13(b)(6)**.

> [w]hen Congress authorized district courts, as a matter of discretion, to release an inmate from prison based on extraordinary and compelling reasons, it did so to introduce compassion as a factor in assessing ongoing terms of imprisonment, authorizing a district court to give greater weight to an inmate's personal circumstances—when sufficiently extraordinary and compelling—than to society's interests in the defendant's continued incarceration and the finality of judgments.

*United States v. Hargrove*, 30 F.4th 189, 197 (4th Cir. 2022).

Since *McCoy* and *Hargrove*, the 2023 Amendments have taken effect. These Amendments clarify the Commission's view on what could constitute "extraordinary and compelling reasons" for a sentence reduction under the First Step Act. *See Burrell*, 2023 WL 7726404, at \*4 n.7 ("The Fourth Circuit has yet to address the impact the amended Sentencing Guidelines have on *McCoy* and similar rulings or precisely how courts should apply the amended policy statement in motions for compassionate release, particularly motions filed before November 1, 2023."). The *McCoy* court noted, however, that the Guidelines, while helpful, are merely advisory and do not bind the Court. "[D]istrict courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" 981 F.3d at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)); *see also United States v. Davis*, 99 F.4th 647, 658 (4th Cir. 2024) (confirming that under the 2023 Amendments Courts can still "consider any extraordinary or compelling reason for release raised by a defendant").

The United States Supreme Court has determined that "the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence[.]" *Concepcion v. United States*, 597 U.S. 481, 500 (2022). District courts within the Fourth Circuit have decided that sentencing disparities resulting from intervening changes in the Fourth Circuit's interpretation of the sentencing guidelines can constitute an "extraordinary and

compelling reason" for compassionate release.[13] *See, e.g., United States v. Redd*, 444 F. Supp. 3d 717, 723–724 (E.D. Va. 2020) (finding that the "gross disparity between the sentence Mr. Redd received and the sentence he would have received after the First Step Act . . . constitute[s] [an] extraordinary and compelling reason[] that warrant[s] a reduction to Mr. Redd's sentence"); *see also United States v. Fennell*, 570 F. Supp. 3d 357, 363 (W.D. Va. 2021) (finding that "the significant disparity between [Mr.] Fennell's current sentence and the [ten years reduced] sentence he would face today for the same offense provides an extraordinary and compelling basis for a sentence reduction under § 3582(c)(1)(A)"); *United States v. Arey*, 461 F. Supp. 3d 343, 350 (W.D. Va. 2020) ("The fact that if [the defendant] were sentenced today for the same conduct he would likely receive a [forty year] lower sentence than the one he is currently serving constitutes an 'extraordinary and compelling' reason justifying potential sentence reduction under § 3582(c)(1)(A).").

A plethora of unpublished cases follow this same reasoning. *See, e.g., United States v. Banks*, 2022 WL 220638, at *2–3, *6 (W.D. Va. Jan. 25, 2022) (88-month difference between the low end of defendant's career offender sentencing range and the low end of the non-career offender sentencing range was "such [a] gross disparit[y] in sentencing" that it constituted an extraordinary and compelling circumstance); *United States v. Williams*, No. 1:14-CR-428 (TSE), 2021 WL 5827327, at *6–7 (E.D. Va. Dec. 8, 2021) (difference of "more than three years longer

---

[13] The 2023 Sentencing Guideline Amendments added subsection (c) to U.S.S.G. § 1B1.13, which provides that a change in the law, or in non-retroactive Guidelines amendments, ordinarily shall not be considered when determining whether extraordinary and compelling reasons exist. However, subsection (c) includes an important caveat: "if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction." U.S.S.G. § 1B1.13(c) (2023).

than the high end of the guidelines that would have applied under *Norman*"[14] warranted a reduction in defendant's sentence from 168 months to 125 months); *United States v. Huggins*, No. 3:11-CR-15, 2021 WL 3025459, at *4 (W.D. Va. July 16, 2021) (sentencing disparity of more than five years was a "gross disparity" and an "extraordinary and compelling" reason warranting a sentence reduction); *but see United States v. Hinton*, No. 2:15-CR-80 (MSD), 2022 WL 988372, at *5 (E.D. Va. Mar. 31, 2022) (three to six year sentencing disparity "not so drastic that it constitutes an extraordinary and compelling reason for relief").

Finally, the 2023 Sentencing Guidelines Amendments explain in greater detail the extent to which a court should consider rehabilitation of a defendant in determining whether there is a sufficient extraordinary and compelling reason to provide for a compassionate release:

> REHABILITATION OF THE DEFENDANT. – Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement. However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted.

U.S.S.G. § 1B1.13(d).

The Fourth Circuit has explained that district courts may consider a defendant's rehabilitation in both § 3553(a) and in "extraordinary and compelling reasons" analysis, but that rehabilitation alone cannot be considered an extraordinary and compelling reason itself. *United States v. Davis*, 99 F.4th 647, 659 (4th Cir. 2024) (citing *McCoy*, 981 F.3d at 286 n.9). Instead, rehabilitation may only be considered as one factor among many under § 3582(c)(1)(A). *Id.*

---

[14] *United States v. Norman*, 935 F.3d 232 (4th Cir. 2019) (finding that defendant was subject to a lower guideline range because a drug conspiracy conviction did not constitute a "controlled substance offense" given that the statute of conviction "criminalize[d] a broader range of conduct than that covered by generic conspiracy").

**D.   Courts Must Weigh the Statutory Sentencing Factors Before Granting Compassionate Release**

Even after finding a sufficient "extraordinary and compelling reason" for compassionate release, the Court must then consider the § 3553(a) factors and any relevant post-conviction conduct before modifying a defendant's sentence.  18 U.S.C. § 3582(c)(1)(A); *Martin*, 916 F.3d at 397–98; *McDonald*, 986 F.3d at 412.  The Court must weigh factors including "the nature and circumstances of the offense and the history and characteristics of the defendant."  18 U.S.C. § 3553(a)(1).  The Court also must consider "the need for the sentence imposed . . . to promote respect for the law . . . ; to afford adequate deterrence to criminal conduct; . . . [and] to protect from the public from further crimes of the defendant."  18 U.S.C. § 3553(a)(2).  The statutory sentencing factors direct the Court to consider the kinds of sentences available and the sentencing range established for the offense.  18 U.S.C. § 3553(a)(4).

### III.  Analysis

After due consideration, the Court will deny the Motion for Compassionate Release. (ECF No. 49.)  Although Mr. Patterson submits, and the United States does not dispute, that he has exhausted his administrative remedies, the Court will deny the Motion for Compassionate Release because Mr. Patterson does not present any "extraordinary and compelling reasons" that support his request for release.  *See* 18 U.S.C. § 3582(c)(1)(A)(i).  First, Mr. Patterson's recommended guidelines range would not change even if the Court were to accept his argument regarding the application of "mixed" rather than "actual" methamphetamine conversion guidelines.  The Court should not, and will not, give an advisory opinion on that issue here. Second, Mr. Patterson's rehabilitation, while laudable, cannot itself constitute an extraordinary and compelling reason to justify a reduction in sentence.  Finally, even were Mr. Patterson to offer an "extraordinary and compelling reason" to support his request for release, which he does

15

not, the Court would find that the applicable statutory sentencing factors under § 3553 do not support a reduction of his sentence.

A.     **Increased Guidelines for "Actual" Methamphetamine Do Not Constitute "Extraordinary and Compelling" Reasons for a Reduction in Sentence**

The Court finds that increased guidelines for "actual" methamphetamine do not constitute an "extraordinary and compelling reason" to support Mr. Patterson's request for a sentence reduction because Mr. Patterson's guidelines range would remain the same even if the Court were to treat the methamphetamine as "mixed" rather than "actual." *See* 18 U.S.C. § 3582(c)(1)(A)(i). More specifically, the Court does not decide the propriety of the ten-to-one ratio for "actual" methamphetamine versus "mixed" methamphetamine because it would not change the outcome here.

Mr. Patterson presents similar arguments to those he made in requesting a downward variance during his 2020 sentencing. Specifically, Mr. Patterson argues that the average purity level of methamphetamine "on the street" has risen to such a point that enforcing higher guideline ranges for "actual" methamphetamine versus "mixed" methamphetamine is inappropriate. (ECF No. 49, at 7–8.) Mr. Patterson contends that the higher guidelines for "actual" methamphetamine were intended to target individuals with a prominent role in drug industries, as opposed to smaller dealers. (ECF No. 49, at 7–8.) Mr. Patterson alleges that in 2019, "methamphetamine had an average purity level of 97.2%." (ECF No. 49, at 7.) He maintains that such a high average purity level results in sentencing lesser dealers according to guidelines for "actual" methamphetamine or "ice," even though they were not the intended targets of the higher penalties. (ECF No. 49, at 7–11.) Mr. Patterson cites numerous cases

16

wherein district courts deviated from the guidelines and provided relief on this basis.[15]   (ECF No. 49, at 8–11.)

At Mr. Patterson's 2020 sentencing, the Court stated that cases addressing the continued relevance of higher guidelines for "actual" methamphetamine or "ice" were too inconsistent to establish a pattern on which the Court could rule on whether a ten-to-one ratio for "actual" methamphetamine versus "mixed" methamphetamine remains appropriate.   (*See* ECF No. 52, at 76.)   Since that time, the United States Court of Appeals for the Fourth Circuit has held that "district courts have discretion to reject the Ice Guidelines on policy grounds . . . [b]ut just because you can does not mean you must."   *United States v. Williams*, 19 F.4th 374, 378 (4th Cir. 2021), *cert. denied*, 142 S. Ct. 1392 (2022).   This Court will not address Mr. Patterson's policy argument here.

Furthermore, even if the Court were to reject the ten-to-one ratio for "actual" versus "mixed" methamphetamine, Mr. Patterson's recommended sentencing guidelines would remain the same.   When he was arrested, Mr. Patterson possessed approximately 232.59 grams of methamphetamine in "ice" form, approximately 21.5 grams of 3,4-methylenediogymethampetamine ("MDMA"), and approximately 34.92 grams of marijuana. (ECF No. 39, at 5.)   Mr. Patterson also possessed over $27,000, of which $19,662.88 represented the proceeds of prior sales of controlled substances.   (ECF No. 53-1, at 13:2–6.)   Treating the

---

[15] Without citing U.S.S.G. §1B1.13(b), several of Mr. Patterson's arguments suggest that his sentence might be "unusually long."   (*See* ECF No. 49, at 14 (noting that his sentence is "46 months longer than the average sentence" and that "54% of ice related convictions receive a downward variance" rendering his sentence "disparate.").)

Mr. Patterson likely recognizes that he has not yet served the 10 years' imprisonment required to invoke that prison.   The Court adds that, for the reasons articulated throughout this decision, Mr. Patterson also does not establish that he received a grossly disparate sentence.

17

methamphetamine as "ice," these drug quantities converted to 8,157.78 kilograms of Converted Drug Weight. (*See* ECF No. 39 ¶ 14.)

If the Court were to accept Mr. Patterson's argument and treat the methamphetamine as "mixed" methamphetamine, these drug quantities would convert to 3,964.68 kilograms of Converted Drug Weight. *See* U.S.S.G. § 2D1.1(a)(5), (c)(4), Note to Drug Quantity Table (K), cmt. n.8(D). This quantity would still result in a Base Offense Level of 32, which encompasses Converted Drug Weights of at least 3,000 kilograms but less than 10,000 kilograms.[16] U.S.S.G. § 2D1.1(c)(4).

Because Mr. Patterson's recommended guidelines range would not change even if the Court were to accept his argument for the rejection of the ten-to-one ratio for "actual" methamphetamine, such argument cannot constitute "an extraordinary and compelling reason for relief." *See Hinton*, 2022 WL 988372 at *5.[17]

### B. Mr. Patterson's Rehabilitative Efforts Do Not Constitute an "Extraordinary and Compelling" Reason for a Sentence Reduction

Mr. Patterson contends that the Court should grant his Motion for Compassionate Release because he engaged in post-offense rehabilitation including completing drug treatment

---

[16] The $19,662.88 attributable to prior sales of controlled substance converts to 3,488.00 kilograms of Converted Drug Weight. (*See* ECF No. 39, at 7.) Thus, the classification of the methamphetamine as "mixed" or "actual" is immaterial because the cash proceeds alone suffice to establish the Base Offense Level of 32. *See* U.S.S.G. § 2D1.1(a)(5), (c)(4), Note to Drug Quantity Table (K), cmt. n.8(D).

[17] Because district courts continue to split on this issue, as they did in 2020, the Court remains without a sufficient pattern on which to decide if a ten-to-one ratio is advisable. *Compare United States v. Robinson*, No. 3:21-CR-14-CWR-FKB-2, 2022 WL 17904534, at *3 (S.D. Miss. Dec. 23, 2022) (collecting cases that rejected the ten-to-one ratio on policy grounds), *with United States v. Blackburn*, No. 08-0256-WS, 2024 WL 1496872, at *2 (S.D. Ala. Mar. 26, 2024) (distinguishing cases that held the ten-to-one ratio inappropriate and holding that a sufficient policy rationale exists for the ratio), *and Hatcher v. United States*, No. 5:20-CR-32-

and remaining drug free, obtaining a GED, participating in 942 programming days in various topics, and maintaining a job in prison. (ECF No. 49, at 7.) Further, Mr. Patterson has no disciplinary infractions on his record throughout incarceration. (ECF No. 49, at 7.)

This Court commends Mr. Patterson for his ongoing efforts to improve himself and prepare for life outside of prison. He has received his GED and, most importantly, has identified that his continued work in sobriety will provide the necessary grounding to live a law-abiding life. However, Congress has made clear that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). "Prisoners are *supposed* to follow the rules, take classes, work at a job, and otherwise attempt to improve themselves. That a prisoner does so means that he has met baseline expectations, not that he [or she] has done something extraordinary." *United States v. Logan*, 532 F. Supp. 3d 725, 735 (D. Minn. 2021) (emphasis in original); *see also Davis*, 99 F.4th at 659. The Court encourages Mr. Patterson to continue in his rehabilitative efforts but cannot grant a sentence reduction, even given his extensive efforts, based on extraordinary and compelling circumstances due to rehabilitation alone. *See* 28 U.S.C. § 994(t).

### C. The § 3553(a) Factors Do Not Support a Reduction in Mr. Patterson's Sentence

Although Mr. Patterson did not satisfy the "extraordinary and compelling" reason for compassionate release, even if he had, the Court concludes that the § 3553(a) factors weigh against his release. *See* 18 U.S.C. § 3553(a). This Court speaks to those factors in the interest of creating a full record.

---

KDB-SCR-1, 2024 WL 666497, at *3 (W.D.N.C. Feb. 16, 2024) (rejecting policy argument against ten-to-one ratio).

The Court first reiterates its findings during sentencing about the nature and circumstances of this offense.  Mr. Patterson possessed six highly dangerous and powerful guns alongside a dangerously high volume of drugs and thousands of dollars.  He initially refused to comply with law enforcement commands while his companion carried a weapon nearby.  This level of drug dealing could suggest the need for an *upward* variance, especially given Mr. Patterson's criminal history.

Indeed, this Court previously considered Mr. Patterson's extensive criminal history and "a history of noncompliance." (ECF No. 52, at 77.)  Mr. Patterson's voluminous criminal record included weapons charges, burglaries, an assault charge, and multiple larcenies. (ECF No. 45 ¶¶ 42–72.)  Mr. Patterson's consistent failure to comply with probation terms was "prodigious." (ECF No. 52, at 78.)  The Court must consider his repeated non-compliance and the seriousness of the crimes committed as they relate to public safety and deterrence of criminal conduct.  *See* 18 U.S.C. § 3553(a).  And "the history and characteristics of the defendant" includes that Mr. Patterson has a criminal history score that is nearly double one required for the highest level of VI under sentencing guidelines. (ECF No. 45, at 27.)

Likewise, this Court takes notice of Mr. Patterson's difficult upbringing and efforts at self-improvement and compliance with the law.  Even at the time of sentencing, Mr. Patterson had obtained a GED, was taking college courses, and did not have a single disciplinary violation or instance of drug use during incarceration. (ECF No. 52, at 79.)  Mr. Patterson's efforts at self-improvement appear to continue.  At the time of filing, Mr. Patterson has remained drug free, has participated in prison programming, and maintained a job while incarcerated. (ECF No. 49, at 2.)  The Court has no reason to question Mr. Patterson's release plan for after his incarceration which involves the support of his family who live in Virginia. (ECF No. 49, at 13.)  Mr.

20

Patterson also enjoys the support of close friend Christine Martin, who wrote to the Court saying that Mr. Patterson "has a good heart and takes care of those he cares about . . . . [A]t the core, this is a good person." (ECF No. 49-2, at 1.)

Although Mr. Patterson's accomplishments while incarcerated are laudable, as is the support he has and will continue to receive from those who care for him, they do not outweigh the continuing need for the sentence imposed to reflect the seriousness of the offense for which Mr. Patterson was convicted and which constituted the capstone of a history of criminal non-compliance. Mr. Patterson's 188-month sentence is sufficient but not greater than necessary to reflect the seriousness of his conduct. While Mr. Patterson will be 58 years old upon release, this seemingly harsh reality flows in part from the fact that Mr. Patterson was 43 years old when he committed these offenses. At age 43, the likelihood of recidivism already should have waned.

Despite the achievements of Mr. Patterson while incarcerated, the Court concludes that the record before it does not justify Mr. Patterson's early release from federal imprisonment.

### IV.  Conclusion

For the reasons explained above, the Court DENIES the Motion. (ECF No. 49.) An appropriate Order shall issue.

Date: 10/2/2024
Richmond, Virginia

_____
M. Hannah Lauck
United States District Judge